Nelson *v.* Trigg.

THOMAS A. NELSON, Ex'r, *v.* MARTHA L. TRIGG *et al.*

ASSIGNOR AND ASSIGNEE. In a contest between the assignees of a claim allowed against a decedent's estate in an insolvent suit, and a creditor of the assignor, the assignees will have the better right, if before the commencement of the creditor's suit the personal assets of the insolvent estate have been exhausted and the funds for the satisfaction of the claim are the proceeds of realty, and the assignments were filed in the insolvent cause and entered on the minutes, and, *a fortiori*, if the entry be by consent of parties and contain a formal stop order, although the personal representative of the estate have no personal notice of the assignments until after the service of the creditor's bill upon him.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Sp. Ch.

SMITH & COLLIER for Mrs. Stockley.

GANTT & PATTERSON, ESTES & ELLETT and H. C. KING for defendants.

COOPER, J., delivered the opinion of the court.

The contest in this case is over a fund in the chancery court, between the assignees of the owner of the fund and a judgment creditor of the assignor. The chancellor decided in favor of the assignees, and the creditor has brought the case up by writ of error.

About the close of the year 1865, Thos. A. Nelson, as executor of John Trigg, deceased, filed his bill against the widow, Martha L. Trigg, and the heirs, devisees and creditors of the deceased, for the purpose of having a sale of land to pay the debts. The widow, by her answer filed on the 29th of March, 1866, set up a claim against the estate of her husband under an antenuptial and post-nuptial contract. The claim was ascertained and allowed before any of the assignments hereinafter mentioned. In July, 1867, there was a decree for the sale of land for the payment of the debts, but this decree, upon appeal of the devisees, was, at the April term, 1870, of this court, reversed on the ground that the personalty had not been exhausted, and the cause remanded. Further proceedings were had, and from a decree rendered in 1872, declaring all the lands liable for the payment of debts, some of the devisees appealed again. Pending the appeal, the insolvency of the estate was suggested on December 10, 1874, and an amended bill

filed by the executor as an insolvent bill. At the April term, 1877, the cause in this court was heard, the decree modified, and the cause again remanded. Afterwards, such proceedings were had in the cause under the original and amended bill that, on the 5th of July, 1877, a decree was had for the sale of land for the payment of debts. And it is admitted that the funds in court, which are now in controversy, are the proceeds of real estate sold by the master under the decrees in the cause. By a petition filed by Martha L. Trigg on the 26th of January, 1878, a decree was obtained March 18, 1878, declaring that her claim was entitled to be first paid out of the proceeds of sale, and this decree was affirmed by this court.

On the 30th of October, 1871, Martha L. Trigg, by a formal instrument in writing, assigned to B. M. Pond so much of her claim, as shown by the report of the clerk and master, against the estate of John Trigg, deceased, as would pay him $5,740.06, with interest from the date of the assignment. On the next day an entry was made on the minutes of the court, reciting that B. M. Pond came into court by his solicitor, and presented and proved the assignment, which is then set out in *hæc verba*. "And," the entry proceeds, "upon motion, and by consent of parties, this assignment is recognized by the court, and the clerk and master is ordered to withhold from the said Martha L. Trigg so much of the moneys and funds which may hereafter be collected upon the claims of the said Trigg, presented by her and reported in

her favor in this cause, as may be sufficient to pay and satisfy to said Pond or his assigns said sum, &c., with interest, &c.; and out of the first moneys so collected or received upon said claims, he will pay to said Pond · or his assigns said sum with interest as aforesaid. This order is entered as a stop order to perfect and complete said assignment." The parol proof, if it be looked to, is that the solicitor of Thos. A. Nelson, the executor, was present and consented to this decree, but Nelson himself was not present, nor does it appear whether he had actual notice of the decree or the assignment until after the filing of the creditor's bill hereinafter mentioned.

On the 21st of November, 1873, Martha L. Trigg sold and assigned to James T. Hargraves so much of her recovery against the estate of John Trigg, deceased, as would be sufficient to pay him $1,356.17, with interest thereon from that date. This assignment was filed in the cause, the clerk and master then having notice thereof, on April 1, 1874, and on the same day an order was entered on the minutes, reciting the fact of the assignment, and directing the clerk and master to pay the amount called for to Hargrave next after the payment of the Pond claim.

. On the 5th of April and 29th of May, 1875, sundry small assignments of portions of the recovery were made to various creditors, and on the latter date an order of court was entered recognizing them, and directing their payment after the satisfaction of prior claims. The proof shows that the clerk and master had notice of these assignments at the time.

On the 2d of February, 1878, C. A. Stockley and wife, as judgment creditors of Martha L. Trigg, by judgment recovered on the 9th July, 1877, on which execution had been issued and returned *nulla bona*, filed their bill against Martha L. Trigg, Thomas A. Nelson, executor, and the clerk and master of the chancery court, seeking to subject to the satisfaction of their judgment so much of the recovery of Martha L. Trigg against the estate of John Trigg, deceased, as might be necessary to pay the same and costs. The fund being insufficient to pay the claims of the assignees and the Stockley judgment, it becomes necessary to settle their priorities.

The assignments having been made by Martha L. Trigg long before the filing of the bill of Stockley and wife, it is clear that the assignees have the prior equity, and are entitled to the fund unless there is something else in the case to give the judgment creditors the better right. The judgment creditors insist that they have acquired the better right by first giving notice to Nelson, the executor, by their bill. It is the rule in this State that unless an assignee of a *chose in action* perfect his right by giving notice to the debtor, a subsequent assignee or creditor of the assignor may acquire the better right. The argument on behalf of the judgment creditors is, that the executor of John Trigg's estate is the debtor in this case of Mary L. Trigg, that the executor had no actual notice of the assignments until after the filing of their bill, and that the entries on the minutes of the court were only operative between the assignor

and the assignees, being *coram non judice* as to the executor: *Penniman* v. *Smith*, 5 Lea, 130.

The original bill of the executor was filed for the sale of realty to pay debts upon the ground of the exhaustion of the personal assets. It was turned into a regular insolvent bill in 1874, and a decree for a sale of real assets rendered in July, 1877. And it is agreed that the funds in controversy are the proceeds of realty. It is obvious, therefore, that before the filing of the bill of the judgment creditors there had been a virtual finding of the plea of *plene administravit* in favor of the executor on the claim of Martha L. Trigg, and the lands of the testator subjected to the payment of her debt. With these lands, or their proceeds, the executor, as such, has nothing to do. The real assets are administered by the court, and can only be paid out under its orders. As to these funds, the personal representative is not the debtor. With much more propriety, the heirs or devisees, whose property is taken, may be considered the debtor. In truth, the realty and the funds derived therefrom are in the court for the purpose of paying the debts of an insolvent estate, and there is virtually no debtor. The claims are to be paid out of the assets of the estate, and cease to be a personal charge on any person. If any person is to be notified of an assignment of such a claim it would seem to be the clerk or commissioner who may be ordered to sell and collect, or the court itself, by what the English books call a stop order: *Swayne* v. *Swayne*, 11 Beav., 463; *Greening* v. *Beckford*, 5 Sim., 195. The entry made

at the instance of Pond on his assignment was a formal stop order. And the clerk had notice at the time of the other assignments. If the subsequent creditor has done nothing more to perfect his right than the prior assignees, the latter, having the first equity, must prevail: *Dinsmore* v. *Boyd*, 6 Lea, ——. And if the money had been paid in to the clerk before the bill of the judgment creditor was filed, the money belonged to the assignees, and there was nothing to reach: *Id.*

Decree affirmed with costs.